UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHONTEA L.,

            Plaintiff,

      v.                                       **DECISION AND ORDER**

                                                  23-CV-1315S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

        1.        Plaintiff Shontea L.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her applications with the Social Security Administration on December 10, 2020. She initially alleged disability beginning May 1, 2020, due to cervical degenerative disc disease, cervical radiculopathy, bilateral carpal tunnel syndrome, back and elbow arthralgia, and depression. Plaintiff's applications were denied and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On April 28, 2022, ALJ Barbara Dunn commenced a telephone conference hearing (due to the COVID-19 pandemic) at which Plaintiff represented by counsel and

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Vocational Expert Esperanza Distefano appeared and testified. (R.[2] at 31-65.) Plaintiff was 35 years old on the onset date, had a high school education, and worked as a nursing assistant. (R. at 24, 66, 276.)

4. The ALJ considered the case *de novo* and, on November 28, 2022, issued a written decision denying Plaintiff's applications for benefits. (R. at 17.) After the Appeals Council denied her request to review this decision, she filed the pending action challenging the Commissioner's final decision.[3] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 6, 8.) Plaintiff filed a response on May 17, 2024 (Docket No. 10), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be denied, and Defendant's Motion will be granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's November 28, 2022, decision became the Commissioner's final decision on this matter when the Appeals Council declined review.

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical

3

>or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. At Step Two, an impairment or combination of impairments is deemed "severe" if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); see Miller v. Berryhill, No. 16-CV-06467 (MAT), 2017 WL 4173357, at *7 (W.D.N.Y. Sept. 20, 2017). The claimant bears the burden of establishing the severity of her impairment but this severity "requirement is *de minimis* and is meant only to screen out the weakest of claims." Herman S. v. Comm'r, 577 F. Supp. 3d 190, 195 (W.D.N.Y. 2022); see also Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

11. When the claimant asserts severe impairments, the ALJ then assesses the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1546(c), 416.920(e), 416.946(c). The ALJ's "conclusion need not perfectly match any single medical opinion in the record, so

4

long as it is supported by substantial evidence." Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022); see also Perales, 402 U.S. at 399.

12.     Although the claimant has the burden of proof at the first four steps, including determining at Step Four whether she could perform her past relevant work, the Commissioner has the burden of proof at the fifth and final step. See Yuckert, 482 U.S. at 146 n.5.  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

13.     The ALJ here analyzed Plaintiff's claims for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of May 1, 2020. (R. at 19.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  cervical degenerative disc disease, cervical radiculopathy, bilateral carpal tunnel syndrome, and back and elbow arthralgia.  (R. at 20.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

14.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with limitations.  Specifically, the ALJ found that Plaintiff could lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently.  The ALJ observed that, during an 8-hour workday, Plaintiff could sit, stand, and walk for 6 hours

each while frequently handling, fingering, and reaching.  The ALJ then found that Plaintiff could not climb ladders, ropes, or scaffolds, or be exposed to hazards such as dangerous machinery or heights, while she could frequently climb ramps, stairs, balance, stoop, kneel, crouch, and crawl.  (R. at 21-23.)

15. At Step Four, the ALJ found Plaintiff was able to perform her past relevant work as a certified nursing assistant.  (R. at 24.)  Plaintiff testified that she was not required to lift more than 15 pounds, and the ALJ concluded that she could perform at the light exertional level her past work as she had performed it, thus finding Plaintiff nondisabled.  (R. at 24, 53-55.)

16. For disability applications filed after March 27, 2017, Social Security regulations require that the agency consider the persuasiveness of medical opinions while not deferring or giving any specific evidentiary weight to any medical opinion.  See, e.g., 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The Social Security Administration considers the supportability and consistency of the opinion as the most important factors in assessing that opinion's persuasiveness.  Id. §§ 404.1520c(c)(1), (2), (b)(2), 416.920c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion.  Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (citing 20 C.F.R. § 404.1520c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion would be.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The more relevant the objective medical evidence and supporting explanations presented by the medical source

in support of their opinion, the more persuasive that medical opinion would be.  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).

17.	Plaintiff now argues that the ALJ erred in formulating an RFC that lacked any express limitation arising from her difficulty moving her neck despite finding her cervical impairments to be severe.  Although conceding that there is no opinion stating any limitation on her neck movement, Plaintiff claims that this does not mean that she was not limited in this regard.  Rather, Plaintiff relies on her limited cervical range of motion noted during her consultative examination and numerous references to limitations of her neck movement, arguing that the ALJ erred in excluding these limitations from the RFC.  (See R. at 413-14, 419, 429-93, 720-21, 1048.)

18.	By focusing exclusively on her neck pain, Plaintiff waives any other possible objections to the ALJ's decision.  See Harrington v. Comm'r, No. 18-CV-979-HBS, 2020 WL 913664, at *3 (W.D.N.Y. Feb. 26, 2020).

19.	Plaintiff argues that her neck pain complaints and the consultative examination opinion of Hongbiao Liu, M.D., documenting her limited cervical range of motion established her neck limitations that should have been incorporated in the RFC.  This Court, however, finds Plaintiff's argument without merit because the ALJ appropriately considered Dr. Liu's findings regarding Plaintiff's neck.

20.	Specifically, Dr. Liu examined Plaintiff on March 17, 2021, when Plaintiff complained of chronic neck and low back pain stemming from a 2017 motor vehicle accident, which led to a diagnosis of herniation of disc in the neck and back.  Plaintiff claimed that she had neck pain radiating down both shoulders with numbness and tingling in both hands but denied engaging in physical therapy.  (R. at 412.)

21. Dr. Liu observed that Plaintiff could lift 20 pounds, noting that Plaintiff did not require an assistive device or help either changing for the examination or getting on and off the examination table. (R. at 412-14.)

22. Dr. Liu noticed that Plaintiff's cervical spine showed flexion and extension 40 degrees, lateral flexion left and right 40 degrees, and rotation left and right 75 degrees. (R. at 414.) Dr. Liu reviewed x rays of Plaintiff's cervical spine taken on March 17, 2021, which revealed moderate disc space narrowing associated with reactive hyperostosis seen at C4-C5, while the height of vertebral bodies appeared to be relatively well maintained. (R. at 416.) Dr. Liu observed that Plaintiff had full range of motion in her shoulders, elbows, forearms, and wrists, while her gait was normal. Dr. Liu also noted that Plaintiff had mild difficulty in heel and toe walking due to low back pain. (R. at 413-14.) The doctor found that Plaintiff had intact hand and finger dexterity and full arm strength and grip strength but no muscle atrophy evident in her arms. (R. at 414.)

23. Dr. Liu diagnosed Plaintiff with chronic neck and low back pain secondary to a motor vehicle accident with a stable prognosis. (R. at 414-15.) Dr. Liu then opined that Plaintiff had mild limitations for bending, lifting, carrying, overhead reaching, and prolonged sitting. (R. at 415.) But the doctor did not express an opinion regarding limitations arising from Plaintiff's cervical spine.

24. The ALJ acknowledged Dr. Liu's opinion finding no more than mild restrictions regarding Plaintiff's prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing. The ALJ was persuaded by Dr. Liu's finding that Plaintiff was not precluded from work due to her

impairments although the record supported more restrictions related to Plaintiff's postural limitations than were found by Dr. Liu. (R. at 23.)

25.	The ALJ concluded that Plaintiff could perform light work manifested by her "limited and conservative care" demonstrated by her chiropractic treatment and medication as well as her lack of required emergency care, hospitalization or surgery. (R. at 22-23.) The ALJ noted that diagnostic imaging indicated cervical disc herniation, although there was no indication of nerve root involvement. Further, the ALJ found support for the RFC from the absence of gait abnormalities or the lack of significant extremity strength or sensation deficits, and no hand/finger dexterity issues. The ALJ also listed Plaintiff's acknowledged activities of daily living of providing childcare and maintaining her personal hygiene as being consistent with the ability to perform light work. (R. at 23.)

26.	It should be noted that under Social Security regulations the ALJ need not defer to Dr. Liu's opinion. See 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Moreover, Plaintiff bears the burden of proof through Step Four of the sequential analysis that she has a disability that precluded performance of her past relevant work. Yuckert, 482 U.S. at 146 n.5.

27.	Looking at Plaintiff's cervical condition and notwithstanding Dr. Liu's perceived silence as to limitations arising therefrom, this Court concludes that Plaintiff has not established her inability to perform her past work due to that condition.

28.	Plaintiff admits that there was no opinion stating any limitation arising from her neck movement. Instead, she merely relies on Dr. Liu's limited range of motion finding (R. at 413-14) and her own testimony to conclude that a limitation might exist.

29. This Court finds that the ALJ did not err in determining the severity of Plaintiff's neck pain limitations in the RFC.

30. This Court further finds that the ALJ had substantial evidence from this record to conclude that Plaintiff's neck pain was not a disabling impairment. Plaintiff has not met her burden of proof that she had any limitation arising from limitations in her neck movement or any disability arising from her cervical spine at Step Four of the sequential analysis. She has not shown that her past relevant work required either frequent or constant neck movements that she could not perform without discomfort. See Rebecca H. v. Comm'r, No. 6:20-CV-01058 (TWD), 2022 WL 293854, at *7 (N.D.N.Y. Feb. 1, 2022). That the RFC did not include limitations arising from Plaintiff's cervical impairment is of no moment.

31. The precedent cited by Plaintiff for the clear error in the ALJ not including limitations from her neck impairments is readily distinguishable. The ALJ's discussion of Plaintiff's cervical condition (R. at 22-23) is distinct from Burek v. Saul, No. 19-CV-301-MJR, 2020 WL 3401360, at *4 (W.D.N.Y. June 19, 2020), cited by Plaintiff. In Burek, Magistrate Judge Michael Roemer found that the lack of any discussion of that claimant's cervical impairment called into question whether the ALJ's decision was supported by substantial evidence. (Id.)

32. The present case also differs from other cases Plaintiff cited where there was a lack of discussion of claimant's abilities to move their necks and heads. Cf. Frank G. v. Comm'r, No. 5:17-CV-103, 2019 WL 430887, at *3-8 (D. Vt. Feb. 4, 2019); Hopkins v. Comm'r, No. 6:13-CV-1082 (GTS), 2015 WL 4508630, at *5-6 (N.D.N.Y. July 23, 2015).

33.    For example in Hopkins, the ALJ failed to discuss a doctor's limitation finding as to that claimant's reduced ability to maneuver her head and neck. That court concluded that this omission called "into question whether the decision was actually based on substantive evidence." 2015 WL 4508630, at *5-6.

34.    The present case also is distinguishable from another cited case, Hogan v. Astrue, 491 F. Supp. 2d 347, 355 (W.D.N.Y. 2007), where the ALJ's finding conflicted with medical opinions that would restrict that claimant from performing jobs requiring twisting her neck and trunk due to her chronic neck pain. Plaintiff in the present case, however, has not presented medical opinions establishing occupational limitations due to her neck pain.

35.    Moreover, Plaintiff's cervical treatment record did not indicate any limitation due to neck pain or restriction in her neck movement. For example, on June 8, 2018, Zair Fishkin, M.D., and Krystle Collins, FNP-BC, examined Plaintiff wherein she reported persistent numbness and tingling from her right upper extremity through her hand, and enduring pain on a scale of 5-6 out of 10 that would rise to 8 out of 10 on a bad day, although she did not state what constituted a bad pain day or the frequency of such days. (R. at 449.) Dr. Fishkin and NP Collins found that Plaintiff had a normal gait and full strength and grip in her upper extremities, while finding positive impingement in her right shoulder. They recommended that Plaintiff continue chiropractic care and avoid aggravating activities but did not reference Plaintiff's cervical pain or any limitations therefrom. (R. at 449-52.)

36. Plaintiff sought occupational therapy from March through July 2018 for her right elbow and cervical spine, although the main focus of her therapy treatments was her elbow pain. (R. at 443, 445, 447, 457, 459, 461, 463, 465, 472, 474, 479, 481.)

37. On August 30, 2018, Plaintiff was seen by Dr. Fishkin and James Hurd, PA, when she complained of persistent neck pain that she rated as a 5 out of 10 on the pain scale and described as constant with occasional radiation, numbness, and tingling down her right arm. (R. at 434.) Dr. Fishkin and PA Hurd observed that Plaintiff's gait was normal and that she retained full strength in her upper extremities. Both treating providers developed a treatment plan of continued chiropractic care focusing on cervical traction, decompression, and mobilization, while recommending continuing nonoperative treatment "as long as [Plaintiff's] symptoms [were] tolerable." Although, they opined that Plaintiff would face the prospect of surgery for severe intractable pain (R. at 436), they did not note any restrictions deriving from Plaintiff's cervical condition.

38. Plaintiff, however, reported in August 4, 2021, that she never received physical therapy for her neck pain due to her pregnancies. (R. at 720.) She also told Dr. Liu that she did not do physical therapy. (R. at 412.)

39. On September 30, 2021, Robert Smolinski, M.D., reviewed Plaintiff's cervical spine x rays as Plaintiff complained that her pain worsened with activity. (R. at 1048; see R. at 846, 1049.) These x rays, however, showed normal alignment of Plaintiff's cervical spine with unremarkable prevertebral soft tissues and mild spondylotic changes at the C4-C5. (R. at 846, 1049.) Dr. Smolinski diagnosed Plaintiff with "posttraumatic cervical spine arthritis with possible radiculopathy right-sided" and

prescribed further testing. (R. at 1048.) Dr. Smolinski did not note any restrictions in Plaintiff's activities due to her neck pain.

40. Accordingly, this Court concludes that Plaintiff's treatment record furnished substantial evidence for the ALJ's finding that Plaintiff's neck pain did not limit her ability to work.

41. Additionally, Plaintiff testified that she left her job in May of 2020 not due to her neck pain or being hurt but rather due to the COVID-19 pandemic and her lack of childcare. (R. at 40, 42.) She further stated that she had no hospitalization or surgeries for her cervical spine. (R. at 41, 42; see also R. at 22.) Plaintiff reported in her Adult Function Report and hearing testimony that she cared for herself, her children, and her cat. She also stated that she drove, independently traveled, and shopped with the assistance of others. (R. at 41-42, 47-48, 308-10.) This Court finds that Plaintiff's acknowledged activities belie any limitations that may be due to her cervical pain despite her subjective complaints.

42. This Court concludes that, based on Plaintiff's declaration in her Adult Function Report, her statements to Dr. Liu, and her hearing testimony, Plaintiff admitted to leaving her job for reasons other than her neck pain, that she sought limited treatment for her neck pain, and that she otherwise performed activities of selfcare and childcare notwithstanding her pain. (R. at 22, 44, 48, 308-10, 412.) This Court finds that the ALJ appropriately concluded from these admissions and other evidence that Plaintiff was only mildly limited due to her neck pain and thus not disabled.

43. Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds that Plaintiff failed to establish any disability from her cervical

injury or any limitations therefrom at Step Four of the sequential analysis that precluded resumption of her past relevant work.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      March 18, 2025
            Buffalo, New York

                                            s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge